**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **PETITION FOR HABEAS CORPUS** |
| vs. | ) | **RELIEF UNDER 28 U.S.C. § 2255** |
| | ) | |
| Shawn Leo Barth, | ) | |
| | ) | Case No. 1:03-cr-046 |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Shawn Leo Barth, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06-cv-097 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, filed on December 11, 2006. On December 12, 2006, the Court granted the Defendant's request to amend his brief in support of the petition for habeas relief. On February 21, 2007, the Court reviewed the motion and ordered the Government to file a response. On April 20, 2007, the Government filed a response requesting that the Court deny the Defendant's motion for post-conviction relief. For the reasons set forth below, the motion is denied.

**I.   BACKGROUND**

On July 9, 2003, the defendant, Shawn Leo Barth ("Barth"), was charged in a nine-count indictment with various drug and firearm offenses. Count One charged Barth and four other

individuals with conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams of more of a mixture or substance containing a detectable amount of methamphetamine. Count Two charged Barth with possession with intent to distribute 500 grams of a mixture or substance containing a detectable amount of methamphetamine. Count Three charged Barth with distribution of methamphetamine. Count Four charged Barth with possession of a firearm in furtherance of a drug trafficking crime. Count Six charged Barth with being a felon in possession of a firearm and ammunition. See Docket No. 11. Prior to trial, the Government filed an Information alleging that Barth had two prior felony drug offenses therefore subjecting Barth to the possibility of a mandatory sentence of life imprisonment if convicted on either Counts One or Two. See Docket No. 94.

On December 18, 2003, a jury found Barth guilty on all counts. See Docket No. 131. As to Count One, the jury found that the conspiracy involved over 50 grams of methamphetamine or over 500 grams of a mixture or substance containing a detectable amount of methamphetamine. The jury also found that as to Count Two, Barth possessed with intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine.

Barth was sentenced on March 22, 2004. At sentencing, the Court determined that Barth had two prior felony drug convictions and, due to the jury's special findings regarding the amount of methamphetamine involved in the offenses, sentenced Barth to concurrent terms of life imprisonment on Counts One and Two. The Court imposed a concurrent 20-year prison term on Count Three, a concurrent 5-year prison term of Count Four, and a concurrent 15-year prison term on Count Six. On Count Five, the Court imposed a 5-year consecutive prison term as mandated by 18 U.S.C. § 924(c)(1)(A).

On March 25, 2004, Barth filed a notice of appeal.  See Docket No. 165.  Barth appealed his conviction and sentence.  On appeal, Barth argued that (1) he was prejudiced because of a variance between the Indictment that alleged a single conspiracy and the evidence which allegedly showed multiple conspiracies; (2) there was insufficient evidence to convict him; and (3) his sentence violated the Sixth Amendment under United States v. Booker, 543 U.S. 220 (2005).  See United States v. Barth, 424 F.3d 753 (8th Cir. 2005).  The Eighth Circuit Court of Appeals rejected Barth's claims and affirmed his conviction and sentence.  Id.

On December 11, 2006, Barth filed a motion under 28 U.S.C. § 2255.  Barth asserts that his trial counsel were ineffective.  Barth sets forth six alleged deficiencies:  (1) counsel failed to file a motion to suppress evidence; (2) counsel failed to negotiate a plea agreement; (3) counsel failed to call Barth as a witness; (4) counsel failed to investigate Government witnesses; (5) counsel ineffectively cross-examined Government witnesses; and (6) counsel failed to object to sentencing enhancements.

## II.  LEGAL DISCUSSION

### A.  INEFFECTIVE ASSISTANCE OF COUNSEL

The burden of demonstrating ineffective assistance of counsel is on a defendant.  United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003).  To be eligible for habeas relief based on ineffective assistance of counsel a defendant must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  A defendant must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness.

Id. at 687-88; see Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that defense counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 466 U.S. 688, 687 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id.

A defendant must then show that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 690-91. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). Merely showing a conceivable effect is not enough. When evaluating the probability the result would have been different, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). When a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively. Hall v. Luebbers,296 F.3d 385, 692-693 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-04 (8th Cir. 1994).

### 1. MOTION TO SUPPRESS EVIDENCE

Barth contends that his counsel was ineffective for failing to file a motion to suppress evidence seized at a farmstead in Oliver County at which Barth was staying. Barth's claim is frivolous and devoid of any merit. The record clearly reveals that on October 1, 2003, Barth's counsel filed a motion to suppress. See Docket No. 75. A hearing on the motion to suppress was held. See Docket No. 81. On October 30, 2003, the Court issued an Order finding that the search warrants did not authorize the search of the vehicles at the farmstead, but that the search of the vehicles was allowed under either the automobile exception to the warrant requirement of the Fourth Amendment or the inevitable-discovery doctrine. See Docket No. 83.

To the extent that Barth is asserting that counsel was ineffective for failing to challenge the evidence obtain pursuant to the search warrants, to prevail on such a claim Barth must show that the suppression claim would have been "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." See Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Barth has failed to establish that such a challenge would have been successful or that the outcome of the trial would have been different without the evidence. The Court finds that Barth's claim on this issue is so lacking in any demonstrable proof that it much be rejected in its entirety

### 2. NEGOTIATION OF PLEA AGREEMENT

Barth contends that his counsel was ineffective for failing to negotiate a plea agreement with the Government. It is unclear whether defense counsel has a duty to negotiate a plea agreement. See Beans v. Black, 757 F.2d 933, 936 (8th Cir. 1985) ("Defense counsel does not always have a

duty to initiate plea negotiations."); Hawkman v. Parratt, 661 F.2d 1161 (8th Cir. 1981) (while no duty to initiate plea negotiations, the failure to do so may be deficient under circumstances of a particular case). Nevertheless, even if the Court were to assume that Barth's counsel had a duty to negotiate a plea agreement, Barth must still how that his counsel's omission actually prejudiced him. To establish actual prejudice, Barth must establish, through objective credible evidence, that (1) the Government would have offered a plea bargain, and (2) Barth would have accepted such an offer and admitted his guilt. See Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).

A thorough review of the record does not indicate whether the Government would have offered Barth a plea bargain. Even assuming it would have offered Barth a plea agreement, there is no evidence to indicate what the terms of the agreement may have been. As the Government pointed out in its response brief, given the amount of methamphetamine involved and Barth's extensive criminal history, Barth was likely facing a life sentence whether he pled guilty or went to trial. A thorough review of the record reveals no evidence to establish that Barth would have accepted any specific plea agreement. Further, Barth has offered no objective, credible evidence that he was willing to plead guilty prior to trial. In his brief in support of his petition, Barth simply states "[p]etitioner certainly would have considered a plea agreement and his contention is not based on the hindsight of having received a life sentence." See Docket No. 228. Barth has failed to provide an affidavit from himself or others indicating that he was willing to plead guilty prior to trial. As a result, the Court finds that Barth has failed to establish that he was prejudiced by his counsel's performance.

The Court finds that Barth has failed to establish that his counsel was deficient in failing to conduct plea negotiations. The Court also finds that Barth has failed to establish that he was

prejudiced as a result of his counsel's performance. As a result, the Court expressly finds that Barth's claim of ineffective assistance of counsel based on a failure to conduct plea negotiations must fail as a matter of law.

### 3.     DEFENDANT TESTIFYING

Barth next claims that his counsel was ineffective for advising him not to testify and for failing to call him as a witness. Barth argues that he wanted to testify, but counsel advised him not to do so because the jury would not believe him based on his prior convictions. According to Barth, he made no objection at trial because of this evidence. Barth alleged that he had nothing to lose and everything to gain by testifying.

A defendant has a constitutional right to testify, and only the defendant may waive that right. See Rock v. Arkansas, 483 U.S. 44 (1987); United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987). A defendant's waiver of his right to testify, like his waiver of other constitutional rights, should be made voluntarily and knowingly. United States v. Bernloehr, 833 F.3d 749, 751 (8th Cir. 1987) (citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969); Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)). Although the defendant has the ultimate decision whether to waive his right to testify, he must act affirmatively to assert that right. Id. If, during trial, a defendant sits idly and does not express his desire to testify, a knowing and voluntary waiver is deemed to have occurred. Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998); United Stats v. Blum, 65 F.3ed 1436, 1444 (8th Cir. 1995).

> [The Eighth Circuit has] previously held that a knowing and voluntary waiver of the right [to testify] may be found based on a defendant's silence when his counsel rests without calling him to testify. [The Eighth Circuit] stressed that under such circumstances the defendant must act affirmatively rather than apparently

>   acquiescing in his counsel's advice that he not testify, and then later claiming that his will to testify was overcome.

Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998) (internal quotations omitted) (citing United States v. Bernloehr, 833 F.3d 749, 751 (8th Cir. 1987)).

It is clear from Barth's amended brief in support of his petition that he was aware of his right to testify. See Docket No. 228. Assuming Barth's characterization of his discussions with counsel is accurate, it is also clear that Barth knew that his counsel did not intend to call him as a witness. Barth failed to voice to the Court his desire to testify. Eighth Circuit case law is clear – a defendant must affirmatively assert his right to testify. Accordingly, Barth cannot claim his right to testify was violated.

As to Barth's claim that his counsel was ineffective for not calling him to testify at trial, this strategic decision is given great deference. The Presentence Report (PSR) reveals that Bart had several felony convictions, including prior felony drug convictions. See PSR, pp. 22-23. If Barth had testified, the Government asserts that it could have and would have used Barth's prior convictions in cross-examination. Thus, the Court finds that counsel's advice that Barth would likely be impeached if he testified did not fall below an objective standard of reasonableness.

Moreover, Barth completely fails to allege or demonstrate that there was a reasonable probability that the results of the trial would have been different had Barth testified. Barth does not indicate what his testimony would have been, or how that testimony would have changed the outcome of the trial. The Government provided a thorough summary of the witnesses and evidence that implicated Barth in the drug conspiracy and other charges.

>   Large quantities of methamphetamine and marijuana and a firearm were found at the Oliver County property at which Barth was staying. These items were found within vehicles and a utility trailer connected to Barth. The firearm and

ammunition, several bags of marijuana, and drug paraphernalia were found within a B&B Roofing trailer (a company run by Barth's brother) parked on the property. (Tr. 223-26). Marijuana paraphernalia was found in a limousine also parked on the property, the title to which was located inside the residence. (Tr. 236-37). A large quantity of methamphetamine and additional marijuana was found in a pickup truck parked on the property that Barth obtained from Ray Kershaw in exchange for methamphetamine. (Tr. 260-61, 265-66, 272-74, 278-79, 477-81, 511-12, 515).

In addition, numerous witnesses testified about Barth's involvement in methamphetamine distribution. This includes the following:

(a) Ray Kershaw: In additional to testifying that Barth sold him a pick-up truck for an 1/8 ounce of methamphetamine, Ray Kershaw testified he had previously obtained methamphetamine from Barth. (Tr. 272-74, 278-79, 281-82).

(b) James Chrisikos: Chrisikos testified that he sold methamphetamine and marijuana for Barth. (Tr. 337). Chrisikos also testified that shortly before the search of the Oliver County property, Barth showed him methamphetamine, marijuana, and a gun inside the utility trailer parked at the property. (Tr. 343-44). Chrisikos said Barth indicated the gun was there in case somebody got stupid. (Tr. 345). Chrisikos testified he obtained methamphetamine from Barth at this time which he intended to resell. (Tr. 346). Chrisikos subsequently obtained an additional ounce of methamphetamine from Barth at the farmstead. (Tr. 347-48). On this occasion, Barth showed Chrisikos a large chunk of methamphetamine from which Barth took an ounce. (Tr. 353-56). Chrisikos also obtained marijuana on that occasion. (Tr. 356).

(c) William Canada: Canada testified that he gave the keys to the Oliver County resident to Barth after Canada's arrest on unrelated charges. (Tr. 399). Canada also testified that he obtained 8-balls of methamphetamine from Barth (Tr. 402). During those occasions, Canada observed Barth with more meth than what Barth had sold to him. (Tr. 403). Finally, Canada testified that Barth bought two hispanic males over to Canada's residence, one of which was identified by Canada as Vargas. (Tr. 404-06).

(d) Leslie Beneke Schmidt: Beneke Schmidt testified she observed Barth providing methamphetamine and marijuana to others from a shop in Bismarck. (Tr. 592-97). She also testified that she had obtained methamphetamine from Barth at the Oliver County property on several occasions. In approximately February 2003, Beneke Schmidt observed Barth with a large quantity of methamphetamine at this property. (Tr. 605-611). She also testified that Barth offered to trade methamphetamine for her vehicle, and that Barth told her he had obtained vehicles from others persons who owed him money for methamphetamine sales. (Tr. 612).

(e) Jason Kramer:  Kramer also implicated Barth in drug distribution. Kramer testified that, at one time, he had brought back methamphetamine from California. (Tr. 643). Kramer was having difficulty selling the methamphetamine, so he wen to Barth to discuss helping Kramer get rid of the methamphetamine. (Tr. 644-47). Barth informed Kramer that he could hook him up with some methamphetamine. (Tr. 647). Kramer then began obtaining methamphetamine for distribution from Barth on a weekly basis. (Tr. 647-51). Kramer also testified he took a trip to Idaho with Barth and Vargas during which Barth informed Kramer that "these guys" were his source of drugs. (Tr. 657-60). Kramer testified that he gave Barth a vehicle to settle a drug debt Kramer had with Blaine Martinez. (Tr. 663-65).

(f) Russel Lipp:  Lipp also implicated Barth in drug distribution. Lipp testified that he purchased methamphetamine from Barth. (Tr. 717-20). In addition to using the methamphetamine he purchased from Barth, Lipp also sold meth to others. (Tr. 718-19). Lipp indicated the greatest amount of meth he received from Barth on any one occasion was 3 ounces. (Tr. 718, 720-21). However, Lipp noted he observed Barth with a larger quantity of methamphetamine. (Tr. 721).

(g) Rigoberto Fernandez:  Fernandez also implicated Barth in drug distribution. Fernandez testified that he was initially enlisted by Rosalio Vargas to assist in transporting methamphetamine and marijuana from Washington state to Bismarck. (Tr. 837-40). Fernandez testified that upon arrival in Bismarck, he would take the drugs to Nancy Ferneau's residence. (Tr. 842-43, 847). Each of the eight successful trips involved approximately two pounds of methamphetamine and 3-5 pounds of marijuana. (Tr. 847). Fernandez observed Barth at Ferneau's residence on occasions after Fernandez had arrived with the drugs. (Tr. 848). Fernandez also testified that on one of these occasions he observed Ferneau place methamphetamine into a contained, walk to a vehicle driven by Barth, and drop the contained into the vehicle. (Tr. 931-32). Fernandez also stated that a Monte Carlo automobile he used to transport drugs from Washington was obtained by Vargas from Thomas Pinks in exchange for methamphetamine and cocaine, but that it was Barth who conducted this drugs-for-vehicle transaction. (Tr. 866-67).

Fernandez also testified that Vargas obtained a gun from Barth in exchange for cocaine. (Tr. 853-54). Vargas had informed a fellow inmate at the Burleigh County Detention Center that he had obtained the gun from Barth. (Tr. 1276-77). This gun was seized from Vargas when he was stopped for a traffic violation in Minnesota. (Tr. 854-55, 1263-68).

(h) Jennifer Wilke:  Wilke also implicated Barth in methamphetamine distribution. She met Barth through her boyfriend, Blaine Martinez. (Tr. 1075). Wilke testified that she purchased methamphetamine from Barth on one occasion. (Tr. 1076-77).

10

(i) Blaine Martinez:  Martinez also testified that he traveled with Barth to Iowa to obtain methamphetamine for distribution. (Tr. 1113).  He accompanied Barth on approximately five trips to Iowa during which they would obtain approximately a pound of methamphetamine per trip. (Tr. 1114).  Upon returning from Iowa, Barth gave methamphetamine to Martinez for distribution in the local area. (Tr. 1115).  After Martinez was arrested in April of 2000, Barth used a corvette as collateral to post Martinez' bond and secure his release from jail. (Tr. 1045, 1119).  Upon his release, Martinez was picked up by Barth who had some methamphetamine with him, part of which they distributed to others. (Tr. 1119-20).

(j) Scott Messner:  Messner also implicated Barth in drug distribution. Messner testified that he purchased methamphetamine from Barth. (Tr. 1186-87). He did so four to six times a month for two or three months. (Tr. 1189). Messner would use most of the methamphetamine and sell the rest. (Tr. 1188-89). Messner testified that he would purchase as little as a gram and as much as an ounce from Barth. (Tr. 1189). Messner stated that he believed that Barth was getting his methamphetamine from two hispanic males named Rosalio and Junior. (Tr. 1198). Messner indicated that Rosalio had asked Messner to assist him in transporting drugs, but Messner declined. (Tr. 1198).

See Government's Response Brief, pp. 14-18 (Docket No. 210).

As the record reflects, in addition to the drug and firearm evidence, no less than nine fact witnesses implicated Barth on the charged offenses.  After carefully reviewing the totality of the evidence, the Court finds that the inclusion of any proffered testimony by Barth would not have resulted in a different outcome at trial.  The Government's ability to impeach Barth with his prior drug convictions would have lead to the introduction of additional incriminating evidence. The Court finds that there was overwhelming evidence of Barth's guilt.  The Court further finds that even if Barth had testified, he has failed to establish a reasonable probability that the results of the trial would have been different.

The Court finds that Barth has failed to establish that his counsel was deficient in failing to call him as a witness at trial or in advising Barth not to testify.  The Court also finds that Barth has failed to establish that he was prejudiced as a result of his counsel's performance.  As a result, the

11

Court expressly finds that Barth's claim of ineffective assistance of counsel based on failure to call him as a witness and/or advising him not to testify must fail as a matter of law.

### 4.     INVESTIGATION OF WITNESSES

Barth also contends that his counsel was ineffective for failing to properly investigate the Government's witnesses. Barth contends that counsel should have more fully investigated the Government witnesses' criminal histories and the extent of their cooperation with the Government.

To succeed on a claim of ineffective assistance of counsel based on an inadequate investigation, a petitioner must demonstrate that a more thorough investigation would have revealed evidence which would establish a reasonable probability that the results of the trial would have been different. See Schone v. Purkett, 15 F.3d 785, 789-790 (8th Cir. 1993). Barth fails to set forth any specific details as to why his counsel's investigation was allegedly deficient. Barth also fails to suggest what new evidence or legal arguments a more thorough investigation would have revealed.

The Court finds that Barth has failed to establish that his counsel was deficient in the investigation into Government witnesses. The Court also finds that Barth has failed to establish that he was prejudiced as a result of his counsel's performance. As a result, the Court expressly finds that Barth's claim of ineffective assistance of counsel based on inadequate investigation must fail as a matter of law.

### 5.     CROSS-EXAMINATION OF WITNESSES

Barth also asserts that, as a result of the allegedly insufficient investigation, counsel's cross-examination of the witnesses was inadequate. The Government argues that Barth has failed to

establish a reasonable probability that the results of the trial would have been different had Barth's counsel conducted a more effective cross-examination of the Government's witnesses.

A trial counsel's cross-examination techniques, like other matters of trial strategy, are entrusted to the professional discretion of counsel. United States v. Villalpando, 259 F.3d 934, 939 (8th Cir. 2001). Counsel's cross-examination may, in some instances, be so unreasonable that it may constitute ineffective assistance of counsel. The Eighth Circuit has found a counsel's cross-examination techniques to be ineffective in instances where counsel "failed to cross-examine a witness who made grossly inconsistent prior statement." Whitfield v. Bowersox, 324 F.3d 1009, 1017 (8th Cir. 2003)(citing Hadley v. Groose, 97 F.3d 1131, 1135-1136 (8th Cir. 1996) and Driscoll v. Delo, 71 F.3d 701, 709-711 (8th Cir. 1995)).

The record demonstrates that Barth's trial counsel did in fact cross-examine numerous witnesses about their prior convictions and any benefits, or possible benefits, they received (or hoped to receive) in exchange for their cooperation or testimony. These witnesses included: Raymond Kershaw (Tr. 287-288), James Chrisikos (Tr. 373-378, 387), William Canada (Tr. 412-414), Leslie Beneke Schmidt (Tr. 617-620) Jason Kramer (Tr. 684-685), Russel Lipp (Tr. 733-734), Rigoberto Fernandez (Tr. 878-880), James Rhone (Tr. 934-936), Jennifer Wilke (Tr. 1083-1084), and Blaine Martinez (Tr. 1129-1132). Barth's trial counsel also elicited from several witnesses admissions that they were methamphetamine users. (Tr. 283, 386, 412-413, 617, 685-686). He cross-examined a witness about lying to officers and the fact that his trial testimony was inconsistent with his grand jury testimony (Tr. 731-733, 737). He also elicited from some witnesses that they never saw Barth sell methamphetamine to others. (Tr. 1047, 1085).

13

Barth fails to allege why or how the cross-examination that was conducted was deficient or that a reasonable probability exists that the results of the trial would have been different had Barth's counsel conducted a more effective cross-examination of the Government's witnesses. Barth's unsupported allegations are insufficient to demonstrate deficient performance and to overcome the presumption that counsel acted competently. See Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997); Carpenter v. United States, 720 F.2d 546, 547-48 (8th Cir. 1983). The evidence against Barth was overwhelming. Even if the Court were to find that trial counsel's performance was deficient, Barth has failed to establish a reasonable probability that the results of the trial would have been different.

### 6.     OBJECTION TO SENTENCING ENHANCEMENTS

Finally, Barth argues that his counsel was ineffective because counsel did not challenge the sentencing enhancements. Barth argues that counsel was ineffective because counsel did not raise an objection under Blakely v. Washington, 542 U.S. 296 (2004), challenging the use of his prior drug convictions to impose a life sentence. The Government asserts that Barth's claim is without merit because Blakely was not decided at the time of Barth's sentencing and Barth's sentence was imposed pursuant to 21 U.S.C. § 841 rather than the United States Sentencing Guidelines.

It is well-established that counsel is not ineffective for failing to anticipate a change in the law. Parker v. Bowersox, 188 F.3d 923, 929 (8th Cir. 1999); Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990). The Court finds that Barth has failed to establish that counsel's failure to object to his sentence at the time of sentencing was deficient performance.

Even if Barth's counsel had raised such an objection at sentencing, it would not have resulted in prejudice. In his direct appeal, the Eighth Circuit concluded that Barth's sentence was not determined under the United States Sentencing Guidelines. Rather, his life sentences were imposed pursuant to 21 U.S.C. § 841. See United States v. Barth, 424 F.3d 753, 764-65 (8th Cir. 2005). 21 U.S.C. § 841 provides for a mandatory life sentence for defendants (such as Barth) whose offense involves 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and who have "two or more prior convictions for a felony drug offense." See 21 U.S.C. § 841. The jury found beyond a reasonable doubt that Barth's offenses involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The jury was not required to make a finding as to Barth's prior felony drug convictions. See Barth, 424 F.3d 753, 765 (8th Cir. 2005). As a result, a Blakely objection would not have resulted in a different sentence.

The same is true of Barth's conviction for possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 942(c)(1)(A) and as alleged in Count Five of the Indictment. The Court imposed a five-year consecutive sentence of imprisonment on this conviction. The statute does not permit a court to impose a sentence that is above the statutory maximum sentence of life imprisonment for the offense. United States v. Gamboa, 439 F.3d 796, 811 (8th Cir. 2006). Rather, the structure of 18 U.S.C. § 924(c) sets forth detailed statutory minimums. Thus, a Blakely-type objection by counsel at Barth's sentencing hearing would have been without merit, and even if made, would not have altered the statutorily-mandated sentence that was imposed.

**III.    CONCLUSION**

For the reasons set forth above, the Court **DENIES** the Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Docket No. 212).

In addition, the Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Therefore, a certificate of appealability will not be issued by this Court.[1]

If Barth desires further review of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with Tiedeman v. Benson, 122 F.3d 518, 250-252 (8th Cir. 1997).

**IT IS SO ORDERED**

Dated this 22nd day of May, 2007.

                                        */s/ Daniel L. Hovland*
                                        Daniel L. Hovland, Chief Judge
                                        United States District Court

---

[1] The Court of Appeals for the Eighth Circuit has opined that the district courts possess the authority to issue Certificates of Appealability under Section 2253(c). Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).